Filed 3/7/25  In re Mason L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

|  |  |
|---|---|
| In re MASON L., a Person Coming Under the Juvenile Court Law. | B335252 (Los Angeles County Super. Ct. No. 23CCJP04243A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>P.G.,<br><br>        Defendant and Appellant. |  |

APPEAL from an order of the Superior Court Los Angeles County, Pete R. Navarro, Judge Pro Tempore.  Reversed.

Nicole Kronberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

P.G. (mother) challenges the juvenile court's order declaring Mason L. (minor) a dependent under Welfare and Institutions Code section 300, subdivision (a).[1] Respondent Los Angeles County Department of Children and Family Services (Department) contends the appealed jurisdictional finding is supported by substantial evidence. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences to uphold the court's order, if possible. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Mother and father knew each other as teenagers, and became involved after father was living in Minnesota in 2021. Minor was born in Minnesota in December 2022. Mother and minor moved to Los Angeles in May 2023, with father following

_____

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

2

shortly thereafter.  Mother and father did not have a place of their own.

Law enforcement was called to maternal grandmother's home in September 2023, after mother disagreed with how father was holding minor while changing minor's diaper.  According to the summary of the call to law enforcement, "father grabbed his belongings and he attempted to leave their home with [minor].  Mother stated there was a struggle between her and the father, while [minor] was held on the left side of the father's arm.  As mother and father continued to argue, they threw items at each other."  Father later reported that mother threw a shoe at him.  The Department investigated, and closed the matter as inconclusive because the parents appeared knowledgeable about child development and protective of minor, they had the support of extended relatives, and they were open to services to provide them communication and parenting tools.

A second incident occurred on October 20, 2023.  According to a police report of the incident, mother and father got into an argument as mother was leaving father's home with minor.  Father punched mother in the face and left arm, and he pulled mother's hair.  Mother was holding minor for part of the altercation, until paternal aunt came to mother's aid and took minor to paternal aunt's apartment and called 911.  Father left the home before law enforcement arrived.  Mother had bruising on the left side of her forehead and on her left arm.

On October 31, 2023, a social worker interviewed paternal aunt by phone about the incident.  Paternal aunt stated she called law enforcement after mother fled to paternal aunt's apartment because father started hitting her and took her car keys and cell phone.  According to paternal aunt, mother just

3

wanted father to return her belongings so she could leave, but paternal aunt contacted law enforcement to protect her nephew from the violence. Paternal aunt denied any knowledge of prior physical violence between mother and father; they would argue and yell, but had not gotten physical.

On November 2, 2023, father told an investigating social worker that he and mother were in counseling. On November 3, 2023, the social worker interviewed paternal grandmother (PGM), who said she was not present during the incident, but mother told her that father pushed mother, hit her with closed fists and was kicking her, but that minor was not hurt. Mother also acknowledged hitting father and apologized to PGM for fighting in her home. When PGM asked father what happened, he told her "it is our issue, we fought, and that's it." PGM told father he needed to respect PGM's home or he would need to leave. Father cared for minor Sunday through Thursday, from 7:00 a.m. until 6:00 p.m., while mother was at work. Mother and father had verbal arguments, but PGM had never seen them get physically abusive.

On November 3, 2023, mother spoke to a social worker and gave a description of the domestic violence incident that occurred on October 20, 2023. Mother explained that she went to pick minor up from father, and while she was holding minor in her arms, father blocked her from leaving, pushed her towards the couch, and accused her of being a bad mother and of wanting to leave so she could cheat on him. Mother put minor down in an attempt to leave by herself and de-escalate the situation, but father started hitting her arms, legs, and face. She picked minor up and tried to leave again, but father took her car keys and cell phone. Minor was crying throughout the incident, but was not

4

hurt.  Mother took minor to paternal aunt's apartment, and paternal aunt called law enforcement.  Father did not return until four hours later, after law enforcement had left, but mother was unable to leave because father had her car keys and minor's car seat was in her car.  Mother told the social worker that she and father separated for the sake of minor's safety, she and father agreed to engage in individual counseling, and if their relationship worked out they would do couples counseling.  Her only contact with father was to exchange minor because father watches minor while mother is at work.  Mother has a close relationship with PGM and considers her a best friend.  She also seeks advice from paternal aunt, who has four children of her own.

On December 7, 2023, the Department obtained authorization to remove minor from father's custody only, and advised mother of the removal order.  On December 11, 2023, the Department filed a petition alleging, under section 300, subdivision (a), that mother and father "engaged in a violent physical altercation in the presence of the child.  The father forcibly pushed the mother and repeatedly struck the mother with the father's hands, while the mother was holding the child.  The father forcibly pushed the mother towards a couch and blocked the door of the home.  The father pushed the mother to the ground and repeatedly kicked the mother.  The father struck the mother's face and arms with the father's fists.  The father pulled the mother's hair.  The father took the mother's cellular telephone and keys to prevent the mother from leaving and contacting law enforcement.  The mother struck the father with the mother's hands.  The mother sustained bruising to the mother's face, arms and legs as a result of the physical

5

altercation. Such violent conduct by the mother and father endangers the child's physical and emotional health and safety and places the child at risk of serious physical harm, damage and danger." The petition also included an allegation under section 300, subdivision (b)(1), with nearly identical language, but also alleging that mother failed to protect minor "by allowing the father to have unlimited access to the child."

In an interview at her home on January 4, 2024, mother did not deny the allegations. Instead, mother explained that she was hitting father to make him stop hitting her. Mother agreed that minor was traumatized by the incident, and she had noticed he was more sensitive to loud noises, was more easily scared, and was crying more. Father agreed that he and mother had an altercation, but disagreed that mother had failed to protect minor. In January 2024, mother, father, and PGM all reported that mother and father were not seeing each other, and father was not visiting minor. Mother did not want to reconcile with father because he did not support himself, and she did not want him to hold her back from moving forward with her life.

By January 11, 2024, mother's therapist reported mother had completed five of six sessions. The therapist observed that mother had demonstrated capacity to protect minor because mother had been keeping her distance from father.

The Department recommended the court declare minor a dependent, sustain the petition allegations, and order family maintenance services for mother and enhancement services for father. The recommended services for mother were domestic violence education classes for victims, parenting classes, individual therapy, and family preservation services. Father's recommended services included a psychiatric assessment

pursuant to Evidence Code 730, mental health treatment, domestic violence classes for perpetrators and individual therapy, along with drug testing if there was any suspicion of drug use.

At the jurisdiction and disposition hearing on February 8, 2024, mother asked the court to dismiss her from the petition entirely, arguing that her actions during the October 2023 domestic violence incident were protective, as she was holding minor when father started hitting her, and she hit father back in self defense. After the juvenile court made a tentative ruling that it was inclined to dismiss the petition for lack of a current risk, minor's counsel asked the court to sustain the petition, including the failure to protect allegation against mother, because this was not a one-time incident. Minor's counsel pointed to the prior referral from the September 2023 incident, and statements by paternal aunt about parents' previously arguing and yelling at each other. In addition, mother reported that minor was easily scared, crying more and sensitive to loud noises, evidence that minor's exposure to the domestic violence had traumatized him. Minor's counsel asked the court to order age-appropriate therapy.

The court asked whether there was any dispute that the incidents occurred while parents were living together, and that they were no longer cohabitating. Minor's counsel responded that the parents were not living together when the October 2023 incident occurred, because after the couple moved to Los Angeles from Minnesota, maternal grandmother had kicked father out of the home. Minor's counsel also pointed to conflicting statements about whether parents wanted to continue their relationship.

When the court stated it would sustain the petition allegations under section 300, subdivisions (a) and (b) as pled, mother's counsel reiterated that mother had been trying to

protect minor from being struck by father, and paternal aunt's account was consistent. Counsel argued that "to sustain the [subdivision] (a) count against the mother would only further victimize her for keeping her and her son safe in an emergency situation." Counsel also argued that there was no evidence of any ongoing risk of harm posed by domestic violence under the subdivision (b) count, as there was only one incident of actual physical violence, and it would be unreasonable to consider an earlier verbal argument as part of any ongoing pattern. The court stated "I am striking the mother from the (b) count. She is not accused of failure to protect in the (a) count." When mother's counsel pointed out that the count under section 300, subdivision (a), was pled as mutual domestic violence, the court responded it was "just going to leave it as it is pled." The minute order and the interlineated petition show that the court sustained the subdivision (a) count as pled, and sustained an amended count under subdivision (b), striking the allegation that mother failed to protect minor. The court declined to declare minor a dependent, instead ordering parents under section 360, subdivision (b) to comply with services for a period consistent with a voluntary contract under section 301. The court noted its section 360, subdivision (b) order was over the objection of all parties.

Mother appealed.

8

## DISCUSSION

Mother contends the juvenile court erred in sustaining a jurisdictional finding against her under section 300, subdivision (a), based on a single incident of domestic violence.  She argues there was no substantial evidence to support a finding that minor remained at risk of any harm, because there was only one incident of domestic violence, she had acted to protect minor during that incident, and the parents had separated.  We agree with mother that there was insufficient evidence that minor was at risk of harm due to domestic violence at the time of the February 2024 hearing, and we reverse the jurisdictional finding against mother only.

## A. <u>Appealability of order for informal supervision</u>

Section 360, subdivision (b), provides:  "If the court finds that the child is a person described by [s]ection 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with [s]ection 301."  " 'If the court agrees to or orders a program of informal supervision, it does not dismiss the dependency petition or otherwise set it aside.  The true finding of jurisdiction remains. It is only the dispositional alternative of declaring the child a dependent that is not made.' "  (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260.)  The order is tantamount to a

disposition and therefore sufficient for a parent to appeal the underlying jurisdictional finding. (*Id.* at pp. 1260-1261.)

## B. Justiciability of mother's appeal

"An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 (*I.A.*).) As a general rule, a jurisdictional finding as to one parent is good as to both. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.) It is well settled that juvenile court jurisdiction attaches to children, not their parents. (*In re I.A., supra,* at p. 1491.) Here, the juvenile court sustained one allegation under section 300, subdivision (a), concerning the risk of harm posed by parents engaging in a violent physical altercation in minor's presence, and a separate allegation against father only under section 300, subdivision (b). Father has not appealed either finding, so regardless of the outcome of mother's appeal, the court's exercise of jurisdiction will remain.

This court retains discretion to address the merits of a challenge to a jurisdictional finding, even if overturning that finding will have no immediate effect on the assertion of jurisdiction. (*I.A., supra*, 201 Cal.App.4th at pp. 1494–1495.) Although "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal," (*In re D.P.* (2023) 14 Cal.5th 266, 287 (*D.P.*)) appellate courts exercise discretion to reach the merits when a juvenile court's jurisdictional findings could have consequences for the appellant beyond jurisdiction, or when a challenged finding "is based on

10

particularly pernicious or stigmatizing conduct." (*Id.* at pp. 285–286.)

Mother contends that review is warranted in this case because the section 300, subdivision (a) finding against her could impact her in future dependency investigations or proceedings, or could have consequences "related to employment and other areas as a result of being placed on the Child Abuse Central Index ('CACI')." The Department acknowledges this court's discretion and does not offer any argument against an exercise of that discretion.

Considering the court's statements at the adjudication hearing, mother's compliance with services and court orders, and in light of the potential consequences for mother beyond jurisdiction, we exercise our discretion to reach the merits of her appeal.

## C. **The jurisdictional finding against mother**

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "Substantial evidence must be of ponderable legal significance. It is not

11

synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid.*) " ' "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ' " (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

"[I]ncidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a)." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 603; *In re M.M.* (2015) 240 Cal.App.4th 703, 720–721.) " 'While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' " (*In re Ma.V.* (2021) 64 Cal.App.5th 11, 23.)

If we view the evidence most favorable to the court's decision to sustain the count alleged under section 300, subdivision (a), against mother as well as father, there may have been sufficient evidence at the time of the October 2023 incident to support jurisdiction. During their September 2023 verbal disagreement, father reported mother threw a shoe at him, and the police report also noted parents threw items at each other while father was holding minor. There is also uncontroverted evidence that mother and father engaged in a physical altercation in October 2023, with minor present.

However, there is no evidence to support a reasonable inference that minor remained at risk of any physical harm at the time of the February 8, 2024 hearing. More than three months had passed between the October incident and the

12

February hearing, and while mother previously relied on father to provide child care while she worked, she no longer permitted father to contact her or have contact with minor.  Mother had engaged in services and also expressed she had no interest in reconciling with father.  There was no evidence that mother was being untruthful in her statement, and the court made no indication that it found mother to lack credibility.

Rather, it appears that after it struck language alleging mother failed to protect minor from the allegation under section 300, subdivision (b), the juvenile court simply misunderstood the nature of the subdivision (a) allegation and failed to consider the sufficiency of the evidence against mother.  The court's statements underscore our conclusion.  The court announced:  "I am striking the mother from the (b) count.  She is not accused of failure to protect in the (a) count."  When mother's counsel tried to alert the court that the subdivision (a) count involved mutual domestic violence, not just allegations against father,  the court simply responded "I am just going to leave it as it is pled."

Based on the record evidence, we find insufficient evidence to support the court's decision to sustain the jurisdictional allegation against mother under section 300, subdivision (a).  However, because father has not appealed the court's exercise of jurisdiction over minor, the finding against him remains.

## DISPOSITION

The court's jurisdictional finding against mother under Welfare and Institutions Code section 300, subdivision (a), is reversed.

MOOR, J.

We concur:

HOFFSTADT, P. J.

KIM (D.), J.

14